# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| KEITH DONALD TISHKOF, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. CIV-17-421-RAW-SPS |
| MARY FALLIN, et. al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

This action is before the court on Defendants' motions for summary judgment. The court has before it for consideration Plaintiff's complaint [Doc. 1], Defendants' motions [Docs. 24, 25], and a special report [Doc. 23] prepared by the Oklahoma Department of Corrections ("DOC") at the direction of the court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). Plaintiff did not file a response to Defendants' motions for summary judgment.

Plaintiff is currently under the supervision of the DOC and is no longer physically incarcerated within a prison facility. Plaintiff brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Mack Alford Correctional Center (MACC) and Howard McCleod Correctional Center (HMCC). [Doc. 1]. Defendants are Mary Fallin, former Governor of the State of Oklahoma; Joe Allbaugh, Director of DOC; Kameron Harvanek, former Warden of MACC; and Tommy Sharp, Warden of HMCC.[1]

While incarcerated, Plaintiff claims that he was denied the right "to a safe and healthy environment due to prison overcrowding and understaffing." [Doc. 1 at 2]. According to the complaint, Plaintiff was incarcerated at HMCC from March 17, 2016, through January 26, 2017. *Id*. at 5. Plaintiff asserts the conditions of his confinement at HMCC were unconstitutional, that

---

[1] At the time of filing suit, Mary Fallin was Oklahoma's governor and Kameron Harvanek was the warden of MACC. Kevin Stitt is Oklahoma's new governor, and Mike Bolt is now the warden of MACC.

the number of inmates "in all housing units far exceeded the design capacity," that single bunks were replaced with bunkbeds, and that "Plaintiff and other inmates were packed in like sardines, with virtually no unencumbered bed space." *Id*. He alleges, as a result, that the conditions "caused constant friction and tension amongst the inmates," that the "noise level was constantly ear shattering," and that "the air was constantly filled with tobacco, marijuana and PCP smoke, even when the pod officers made their rounds at count times." *Id*. at 5-6. Plaintiff further claims he witnessed several fights, robberies and bizarre behavior by inmates "who were so high they were literally out of their mind" and that he was threatened and assaulted twice. *Id*. at 6. Due to fear of retaliation, Plaintiff states he did not report the assaults. *Id*.

Plaintiff also contends the ratio of sinks, toilets and showers to inmates was "legally unacceptable," that "there were rodents in the kitchen area," that "laundry could not provide the number and type of clothing that DOC policy says inmates are to receive," and that the maintenance department could not keep up with the reported problems. *Id*. at 6-7. Plaintiff allegedly lived in constant fear of being assaulted or robbed by predatory inmates since the officers were understaffed and could not maintain control. *Id*. at 7. He also claims inmates who filed grievances or lawsuits would be subject to violent retaliation, and that "despite many requests," he was never provided with a grievance form, and staff refused to answer his questions about the grievance process. *Id*.

Plaintiff was transferred to MACC in January of 2017. *Id*. at 8. According to Plaintiff, the conditions at MACC "were even worse than at HMCC." *Id*. Staff and officers reportedly told Plaintiff that if he filed paperwork, "he would regret it." *Id*. As a result, he waited until he was transferred to initiate his grievance and lawsuit. *Id*. While at MACC, he was also allegedly stabbed in the face by another inmate as a result of asking for a grievance form. *Id*. Plaintiff claims the stabbing caused serious injury. *Id*. After receiving medical care at the facility, Plaintiff was transferred to the Davis Correctional Facility in Holdenville, Oklahoma. *Id*. at 9. Upon arrival, Plaintiff alleges most of his personal property had been stolen. *Id*.

In summary, Plaintiff claims Warden Sharp and Warden Harvanek were fully aware of the conditions of these facilities "and did nothing." *Id*. at 8. Plaintiff claims "all of the above was

allowed to happen due to the deliberate indifference of all Defendants towards his risk of serious harm, in violation of the 8th Amendment." *Id*. at 9.

Next, Plaintiff states he has read "numerous articles in newspapers on the issue of overcrowding" and also viewed reports on OETA television.[2] *Id*. at 9. According to Plaintiff, the "media reports made it clear that Governor Mary Fallin and DOC Director Joe Allbaugh had long been aware of the seriousness of the overcrowding and understaffing throughout the state prison system," and that "years have gone by with no real corrective action." *Id*. Be that as it may, Plaintiff sets forth the following basis for relief:

> Governor Fallin repeatedly delayed and obstructed the Justice Reinvestment Initiative (JRI) Program which state leaders had tried to implement to address the prison overcrowding problem. Both Governor Fallin and DOC Director Allbaugh refused to implement early release programs to alleviate overcrowding. Governor Fallin initiated new rules and restrictions to dramatically reduce the number of inmates being paroled. Governor Fallin used her authority to handpick members of the pardon and parole board who are all former prosecutors, former law enforcement officers, or former judges known to be against granting clemency.

Id. at 9-10. Plaintiff thereafter concludes the deliberate indifference of all Defendants is "very obvious and apparent" and that the conduct violates the 8th Amendment. *Id*. at 10. Plaintiff claims "this is a continuing violation" and that "lack of funding is not a valid excuse." *Id*. Plaintiff requests declaratory and injunctive relief regarding prison overcrowding and related safety issues in state-run prisons. *Id*. at 11. He also seeks "compensatory damages of $200,000 plus punitive damages of $2,000,000." *Id*. at 13.

**Standard of Review**

Defendants' Allbaugh, Harvanek and Sharp filed a motion for summary judgment [Doc. 24] on April 18, 2018. Defendant Fallin filed a separate motion for summary judgment [Doc. 25] on the same date. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material

---

[2] One website story and miscellaneous information were attached to the complaint for the court's consideration. *Id*. at 14-17.

if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Because Plaintiff is a *pro se* litigant, the court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**Exhaustion of Administrative Remedies**

Defendants Allbaugh, Harvanek and Sharp allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for the claims set forth in the complaint. [Doc. 24 at 4]. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Exhaustion is required even when the prisoner seeks relief that is not available in grievance proceedings. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available."). Moreover, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Id*. Substantial compliance is not sufficient. *Id*. Failure to exhaust is excused only if

prison officials impede the prisoner's attempts. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010).

The procedure for exhausting administrative remedies in this case is set forth in DOC Policy OP-090124 ("Inmate/Offender Grievance Process"). [Doc. 23-2]. The Inmate/Offender Grievance Process has several steps that must be satisfied before filing suit.

The first step of the grievance process requires an inmate to attempt informal resolution of his or her complaint by speaking to an appropriate staff member within three days of the relevant incident. If the inmate is dissatisfied after this initial attempt, a Request to Staff ("RTS") must be submitted. Section VIII(A) explains that this first informal level may be bypassed only if the complaint involves an emergency or sensitive grievance.

Next, if the complaint is not resolved informally, the inmate may obtain and complete an "Inmate/Offender Grievance Form" (DOC 090124A) and submit the grievance form, along with the RTS used in the informal resolution process with the response, to the reviewing authority. If the complaint is medically-related, the inmate must submit the grievance to the facility Correctional Health Services Administrator ("CHSA"). Grievances that are an emergency or of a sensitive nature can be submitted directly to the reviewing authority without informal resolution. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm or other irreparable harm.

Lastly, if the grievance does not resolve the issue, the inmate may appeal to the Administrative Review Authority ("ARA"), or if the complaint is medically-related, to the Medical Administrative Review Authority ("Medical ARA"), within 15 calendar days of receipt of the reviewing authority's decision or any amended decisions. The ruling of the ARA is final and concludes the administrative remedy procedures available through DOC. *See* Section VII(D). The administrative process is exhausted only after all of these steps have been taken.

On September 20, 2017, Plaintiff submitted an RTS seeking $200,000.00, specifically complaining that "statewide prison overcrowding and understaffing due to deliberate indifference of Governor Fallin and DOC Director Allbaugh violated my legal right to a safe and healthy environment." [Doc. 23-3 at 2]. The request was denied. *Id*. On September 27, 2017, Plaintiff reasserted the same complaint within Grievance DCF 17-247. [*Id*. at 3-4]. The grievance was

returned unanswered because inmates may not request monetary compensation through the grievance system. [Id. at 5-6]. The ARA received Plaintiff's appeal on October 19, 2017. [Id. at 7-8]. His appeal was denied. [Id. at 9]. A review of the ARA database reveals Grievance DCF 17-247 is the only appeal submitted by Plaintiff during his incarceration. [Doc. 23 at 6]. Arguing that his claim is non-grievable and that no administrative remedies are available, Plaintiff filed suit. [Doc. 1 at 11].

In their motion, Defendants Allbaugh, Harvanek and Sharp point out that "prison overcrowding and understaffing are not constitutional violations in and of themselves." [Doc. 24 at 6]. Defendants direct this court's attention to *Wilson v. Seiter,* 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman,* 452 U.S. 337, 345–48 (1981), contending "[i]n the context of civil rights litigation, a claim for an Eighth Amendment violation only arises when these conditions - overcrowding and understaffing - lead to an unconstitutional compromise of Plaintiff's health and safety." *Id*. Defendants argue that "Plaintiff's conclusion that exhaustion is excused because overcrowding is not grievable is erroneous, because his complaints about the resulting violations - poor food service, assault, harmful noise and air quality - were clearly grievable according to policy." *Id*. The court agrees.

Plaintiff filed one appeal with the ARA. The appeal made no mention of ear-shattering noise, bad air quality, inadequate ratio of sinks, toilets and showers to inmates, rodents in the kitchen area, inadequate items of laundry, inadequate maintenance, the alleged assaults and stabbing to his face, or stolen personal property. The record does not show these issues were brought to the attention of the prison officials. And Plaintiff's claims within the complaint provide very few details, such as the date or location of each occurrence, the identity of the inmate(s) who allegedly assaulted or stabbed Plaintiff, when and where he received medical treatment for the serious facial injury, names of prison personnel who impeded his ability to file grievances, what items were stolen, etc. Plaintiff simply states he did not report the issues or exhaust administrative remedies due to fear of retaliation from unnamed individuals, and that unnamed prison officials impeded his ability to file grievances. Without a useful administrative record, it should come as no surprise that the court is skeptical.

In *Jones v. Bock*, 549 U.S. 199, 204 (2007), the Supreme Court explained that "[r]equiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." In the case at hand, Plaintiff did not allow prison officials an opportunity to resolve any of the specific violations alleged in the complaint.

To properly exhaust administrative remedies, a final ruling from the ARA is mandatory. An inmate does not get to pick and choose the appropriateness of a particular procedure to his situation, or rely on his own contrary interpretations of the process, or adhere to a belief that he should not have to comply with available processes. *See Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010). Furthermore, the court is not persuaded that Plaintiff's attempts to exhaust were impeded by prison officials. Plaintiff failed to fully and properly exhaust administrative remedies, and Plaintiff's deliberate indifference claims should be denied and dismissed.

**Defendant Fallin is entitled to absolute immunity**

In her motion for summary judgment, Defendant Fallin argues that she is entitled to absolute immunity regarding any failure to ensure that certain laws were passed. [Doc. 25 at 4]. Relying upon *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), Defendant Fallin reminds the court that "[s]tate legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." Defendant Fallin further contends that because "[a]bsolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity," members of the executive branch are also entitled to absolute immunity when they are performing legislative acts. *Bogan* at 54, 55 (quotation omitted). Lastly, Defendant Fallin cites *Supreme Court of Virginia v. Consumers Union of United States, Inc.,* 446 U.S. 719 (1980), claiming she is immune from suit "[b]ecause criminal justice reform is legislative in nature."

The court has carefully reviewed Plaintiff's claims against Defendant Fallin. In short, Plaintiff claims Defendant Fallin failed to implement the Justice Reinvestment Initiative and early release programs, which according to Plaintiff, could have reduced prison population. The claims asserted herein are strikingly similar to claims asserted by another state prisoner in the United States District Court for the Western District of Oklahoma.

7

In *Burnett v. Fallin*, No. CIV-17-385-M, 2018 WL 4376513 (W.D. Okla. June 5, 2018) (unpublished report and recommendation), *adopted by district court*, 2018 WL 4374199 (Sept. 13, 2018), the Honorable Bernard M. Jones, United States Magistrate Judge, analyzed plaintiff Burnett's claims against Defendant Fallin in great detail. Magistrate Judge Jones provided the following reasons for dismissing plaintiff Burnett's claims against Defendant Fallin:

**A. Official Capacity Claims**

All official capacity claims against Defendant Fallin should be dismissed. As Governor of the State of Oklahoma, official capacity claims lodged against her for monetary damages are considered as claims against the state itself. The Eleventh Amendment bars federal courts from granting a plaintiff monetary damages against a state. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 119 (10th Cir. 1998).

\*   \*   \*

**B. Individual Capacity Claims Against Defendant Fallin**

It is undisputed that Defendant Fallin is entitled to absolute legislative immunity for actions of a legislative nature, including budgetary decisions. Because "absolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity,' " absolute immunity is extended to members of the executive branch when they are performing legislative acts. *Bogan v. Scott–Harris*, 523 U.S. 44, 55 (1998) (*quoting Tenney v. Brandhove*, 341 U.S. 367, 376 (1951) ). *See also Smiley v. Holm*, 285 U.S. 355, 372-373 (1932) (recognizing that a Governor's signing or vetoing of a bill constitutes part of the legislative process).

In *Bogan*, the Supreme Court held that city council members were entitled to absolute immunity from § 1983 liability for "actions taken in the sphere of legitimate legislative activity." The Court found that the council's action in eliminating certain services formerly provided by the city was legislative in substance because their action "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56.

Most of Plaintiff's allegations against Defendant Fallin fall clearly within the realm of legislative, discretionary policymaking decisions that implicate budgetary priorities for the State. Failing to take "affirmative action" to ease overcrowding, failing to follow recommendations from committees and task forces, failing to seek a federal grant, dropping planned funding, and failing to carry out sentencing alternatives are all discretionary policy decisions implicating budgetary priorities. Courts have held that legislative acts include, among other things, voting on legislation, resolutions, and ordinances, *see id.* at 55; *see also Sable v. Myers*, 563 F.3d 1120, 1125–27 (10th Cir. 2009); proposing and signing legislation, *see Bogan*,

8

523 U.S. at 55; conducting legislative investigations, *see Sable*, 563 F.3d at 1124 (citation omitted); and introduction of a budget by executive branch because it is an integral steps in the legislative process. *Id.* at 1124-1125.

\*   \*   \*

Plaintiff also faults Defendant Fallin for using her "administrative authority" to appoint members to the Pardon and Parole Board who, like her, are allegedly "tough on crime" making them less likely to grant parole. But "[w]hether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Moreover, the power to make appointments to agency boards is discretionary, and federal courts do not have jurisdiction to control discretionary actions of state officials:

> There is no doubt that the court cannot control the exercise of the discretion of an officer. It can only direct affirmative action where the officer having some duty to perform not involving discretion, but merely ministerial in its nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty.

*Ex parte Young*, 209 U.S. 123, 158 (1908) (*citing Board of Liquidation v. McComb*, 92 U. S. 531, 541 (1875) ). Thus, Plaintiff's argument is without merit.

The same principle applies to Defendant Fallin's use or failure to use her authority to grant clemency, supervised release or parole. All of these actions are discretionary in nature. Moreover, the Supreme Court has held a convicted prisoner has "no constitutional or inherent right ... to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). It follows that the Eighth Amendment does not confer a right on a prisoner to insist on the release of *other prisoners* before the expiration of their valid sentences.

In sum, Defendant Fallin is entitled to absolute legislative immunity for actions or decisions Plaintiff challenges that are "legislative" in nature. Legislative actions or decisions include those that would impact State budgetary considerations such as failing to take "affirmative action" to ease overcrowding, failing to implement recommendations from committees and task forces, failing to seek a federal grant, dropping planned funding, and failing to carry out sentencing alternatives. This Court lacks jurisdiction to control Defendant Fallin's discretionary appointments of members to the Board of Pardon and Paroles, regardless of her motives for choosing its members. Finally, the Eighth Amendment confers no right upon Plaintiff to challenge Defendant Fallin's failure to grant pardons or paroles to either himself or other inmates. For these reasons, the Court should deny Plaintiff's motion for summary judgment and grant Defendant Fallin's motion for summary judgment.

*Burnett v. Fallin*, No. CIV-17-385-M, 2018 WL 4376513, at *3-4.

The analysis provided in the above Report and Recommendation is well-reasoned and clearly applies to the claims asserted herein by Plaintiff against Defendant Fallin. Additionally, because Plaintiff is currently under probationary supervision and is no longer housed within a prison facility, Plaintiff's request for declaratory and injunctive relief is dismissed as moot. *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004). Defendant Fallin's motion for summary judgment must be granted.

**ACCORDINGLY,** Defendants' motions for summary judgment [Docs 24, 25] are GRANTED, and this action is, in all respects, DISMISSED.

IT IS SO ORDERED this 28th day of March, 2019.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA